### 45146. FULTON COUNTY et al. v. BARTENFELD.
(363 SE2d 555)

MARSHALL, Chief Justice.

The appellee, Bartenfeld, filed the instant petition for writ of mandamus, seeking to compel the appellants (who are the Fulton County Board of Commissioners, the chairman of the board, and the individual board members) to approve the issuance to the appellee of a special-use permit under Art. XIX, Sec. I, Par. 30a of the Fulton County Zoning Resolution, authorizing the appellee's construction and operation of a solid-fill landfill on 5 acres of a 114.99-acre tract in north Fulton County.

The tract itself is adjacent to Old Chadwick Road on the tract's southern boundary, and to the Cherokee County boundary line on its northern boundary. The proposed landfill is to be used for the disposal of non-putrescible (or nonorganic) waste, and other materials not subject to easy or rapid decomposition. As found by the trial court, the character of the subject tract and surrounding property is currently rural-residential, in the apparent early stages of transition to residential-suburban.

The Fulton County Department of Planning and Economic Development (referred to hereinafter as the planning commission) concluded that a temporary, solid-fill landfill would constitute a suitable use for this property, provided that adverse impacts on surrounding property are mitigated by various conditions imposed upon the appellee, including the prerequisites that the appellee improve Chadwick Road to industrial specifications so as to accommodate heavier vehicles using the road and that the hours of operation of the landfill be limited. In regard to the temporary nature of the permit authorizing the operation of the landfill, the planning commission noted that the landfill would have a "somewhat limited life" before becoming incompatible with surrounding property. Other conditions, which are required by subparagraphs (1) through (7) of Par. 30a in regard to the operation of solid-fill landfills, were consequently imposed here and will be discussed, infra.

Disapproving the recommendation of the planning commission that the permit application be granted, the board of commissioners decided by a 6-to-1 vote to reject the appellee's application for the permit.

At the hearing before the county commission, only three parties

spoke in opposition to the application. Two of these parties were individual property owners; the third was a property developer who alleged in his testimony that he represented approximately 400 homeowners in the area. However, this testimony was unsupported by documentary evidence such as signed petitions. In any event, the thrust of these parties' complaints was their generalized fear that landfills invariably lower values of nearby property and create traffic problems.

At the county commission meeting, the chairman of the board of commissioners expressed his opinion that, in that the planning commission recommended that the permit application be approved, the county commission did not "really have a very strong position legally" to deny the application, and the appellee was "in a fairly good position to challenge" the commission's denial of the application in court. The chairman also expressed his views concerning the "potential for litigation" of this matter "whatever the outcome" of the county commission's decision, as well as his personal dislike of landfills and his personal belief that "there really is no appropriate acceptable location for a landfill." The chairman further alluded to an issue's having been raised "about the notice and the fact that there were not citizens here to express their opposition. . . ." See Division 5, infra. As previously stated, the board proceeded to deny the application by a vote of 6-to-1.

Under the "Solid Waste Management Act" (OCGA § 12-8-20 et seq.) (referred to as the Act) as well as rules and regulations promulgated thereunder (Rules and Regulations of the State of Georgia, Chapter 391-3-4 (1974)), the Environmental Protection Division of the Georgia Department of Natural Resources issued a permit to the appellee for this solid-fill landfill, subject to local zoning approval. Specifically, the state agency found the appellee's site plan for operation of the landfill to be acceptable for disposal of the allowable non-putrescible waste, contingent upon certain site limitations. The Act expressly states that none of its provisions shall be construed as a limitation "[o]n the power of a municipality, county or special district to adopt and enforce additional regulations, not in conflict with [the Act], imposing further conditions, restrictions, or limitations with respect to the handling or disposal of solid wastes." OCGA § 12-8-39 (1).

The subject property is zoned AG-1 (Agricultural) under the local zoning ordinance, because of the use to which the property was put at the time of the first enactment of Fulton County's zoning ordinance in 1955. Under the county's zoning ordinance, landfills are permitted uses in AG-1 zoning districts pursuant to the issuance of a special-use permit under the applicable provisions of the ordinance.

In this regard, Sec. I of Art. XIX of the Fulton County Zoning

Resolution provides that the governing authority of the county "by special permit may authorize" various uses in any zoning district from which they are otherwise prohibited, and the governing authority is empowered to "impose appropriate conditions and safeguards which may include a specified time period for the permit in order to preserve the comprehensive plan and protect the character of the neighborhood."

Subsection (d) of Sec. I generally provides that all special-use permits shall expire within two years from the date the approval was granted by the board of commissioners, unless certain other specified permits are granted; in line with this provision, the present permit expires within two years. Of the various uses authorized by the special-use permits provided for in Sec. I, Par. 30 authorizes the operation of sanitary landfills; and Par. 30a authorizes the operation of solid-fill landfills, provided that certain conditions are imposed with respect to, among other things, lot area, buffers, and compliance with state and county licensing requirements. Subparagraph (6) of Par. 30a contains a limitation concerning the materials which can be disposed of in a solid-fill landfill, and subparagraph (7) provides that there shall be no more than one renewal of solid-fill landfill permits, which, as previously stated, are limited to two years' duration.

In its order, the superior court, citing *Dougherty County v. Webb*, 256 Ga. 474 (350 SE2d 457) (1986), noted three material facts in this case: (1) First, appellee indisputably has complied with all requirements prescribed by the county zoning ordinance for issuance of the permit. (2) Second, the Environmental Protection Division of the Georgia Department of Natural Resources has recommended that the application for the permit be approved, albeit subject to local zoning approval. (3) Third, the Fulton County Department of Planning and Economic Development has recommended that the application be approved, subject to conditions intended to mitigate the adverse effects on surrounding areas, which conditions have been agreed to by the appellee.

For these reasons, the superior court concluded that under *Dougherty Co. v. Webb*, supra, the county commission's denial of appellee's application constituted a gross abuse of discretion, and was arbitrary, capricious, and unreasonable. Under *Webb*, the superior court further concluded that, accordingly, the appellee has a clear legal right to issuance of the permit, as a result of which a writ of mandamus absolute was issued.

1. In this appeal, the county's sole argument is that, notwithstanding the superior court's findings, under the county zoning ordinance approval of appellee's permit application is a matter lying within the county commission's discretion, which has not been abused here, and, for this reason, the trial court erred in concluding that ap-

pellee has a clear legal right to the relief sought. Consequently, the county maintains that the superior court's judgment should be reversed by this court. For reasons which follow, we disagree.

2. (a) The progenitor of *Webb*, and the seminal decision in this area, is *City of Atlanta v. Hill*, 238 Ga. 413 (233 SE2d 193) (1977), which held, in the field of liquor licensing, that local governing authorities must comply with requirements of due process and equal protection in issuing business and occupation licenses.

(b) In *Arras v. Herrin*, 255 Ga. 11 (334 SE2d 677) (1985), we were presented with a case in which a local alcoholic-beverage licensing ordinance contained objective standards to be utilized in determining whether an alcoholic-beverage license should be granted. One such standard related to the location of the proposed business. However, the local ordinance further provided that the county commission had " 'full and sole authority, in its absolute discretion, to determine whether the applicant for a license under the provisions of this ordinance is a fit and proper person to operate the type of business involved . . . and whether the location of such business is proper and to the best welfare and in the best interests of [the county], and the [county commission's] determination of these requirements shall be final.' " 255 Ga. at pp. 11-12.

In *Arras*, the applicant for the license indisputably complied with the objective standards, including those related to location; however, the county commission denied the application on the ground that the location was not proper. The superior court denied applicant's petition for writ of mandamus, which sought to compel the board to issue the license.

On appeal, we reversed, holding that where, as in *Arras*, the applicant for the license indisputably complies with objective standards set out in the local ordinance regarding the location of the business, the county commission is not authorized to deny the license application based upon the vague language in the ordinance purporting to grant the board "absolute discretion" to determine whether the proposed location for the business is "proper."

As stated in *Arras*, "[a]bsolute and uncontrolled discretion by governing authorities to issue licenses invites abuse, and exercise of discretion by states and local governments must be tempered with 'ascertainable standards . . . by which an applicant can intelligently seek to qualify for a license. . . .' *Hornsby v. Allen*, 326 F2d 605, 612 (5th Cir. 1964). Thus, in Georgia a liquor licensing ordinance must provide 'sufficient objective standards to control the discretion of the governing authority and adequate notice to applicants of the criteria for issuance of a license.' *Levendis v. Cobb County*, 242 Ga. 592 (250 SE2d 460) (1978)." 255 Ga. at p. 12.

We thus concluded in *Arras* that the previously cited vague lan-

guage, under which the board sought to justify its decision, failed to provide sufficient objective standards to meet due-process requirements.

(c) Division 1 of *Webb*, 256 Ga. supra at pp. 475-477, contains a thorough discussion of zoning techniques such as the special-use permit being applied for in this case, the collective purpose of which, as stated in *Webb*, is to authorize a type of land use potentially incompatible with uses allowed in the particular zoning district, with issuance of the permit predicated upon compliance with conditions set out in the ordinance, or in the discretion of the local zoning authority.

Footnote 3 of *Webb* clarifies the division of authority between the local zoning body and the superior court in proceedings involving applications for special-use permits, etc. "[W]here a special permit is sought under terms set out in the ordinance . . . [,] the landowner must present his case on its facts and the law to the local governing body. That body acts in a quasi-judicial capacity to determine the facts and apply the law. See 3 Anderson, American Law of Zoning, § 19.17 (1977); 3 Rathkopf, The Law of Zoning and Planning, § 42-10 (1979), *Olley Valley Estates, Inc.* [*v. Fussell*, 232 Ga. 779 (208 SE2d 801) (1974)]. A disappointed landowner travels to superior court by direct appeal, if the zoning ordinance so provides, or otherwise by mandamus. *City of Atlanta v. Wansley Moving &c. Co.*, 245 Ga. 794 (267 SE2d 234) (1980). The superior court is bound by the facts presented to the local governing body. The law, of course, is determined anew by the superior court. In a mandamus action, the landowner is entitled to relief only where he has established before the local governing body a clear legal right to the relief sought, or demonstrates to the superior court a gross abuse of discretion. Id." 256 Ga. at pp. 477-478.

We did hold in *Webb* that the superior court there erred in ordering the county, by writ of mandamus, to grant the application for special zoning approval. However, we further held that the county's denial of the application was correctly overturned by the superior court, in view of the county commission's erroneous refusal to consider certain evidence with respect to the applicant's alleged compliance with various conditions, set out in the local zoning ordinance as factors which should be taken into consideration by the county commission in exercising its discretion in deciding whether to grant the permit, notwithstanding the applicant's compliance with the enumerated prerequisites. We noted in *Webb* that it was undisputed that, in that case, there had been compliance by the applicant with the prerequisites set out in the county zoning ordinance for issuance of the permit.

3. In this case, as previously stated, the application is for a solid-fill landfill. The three parties who were present at the hearing on the

application, and who testified in opposition to the grant of the application, based their opposition upon the generalized fear, not specifically shown to exist under the facts of this case, that landfills inevitably lower property values and create traffic problems. This testimony was insufficient to rebut the planning commission's finding that the conditions imposed as part of the planning commission's recommended grant of the permit application were sufficient to mitigate potential adverse effects on surrounding property.

4. Consequently, we hold that since the applicant here has complied with all objective conditions and prerequisites set out in the local zoning ordinance for obtaining issuance of the permit, and since the board of commissioners' denial thereof constitutes an act of discretion which is lacking in any articulable, objective ground of support, the appellee has a clear legal right to issuance of the permit, thereby entitling applicant to issuance of the writ commanding grant of the application by the local authorities.

5. The final issue in this case concerns the sufficiency of the notice given adjacent property owners of the pendency of the hearings on the permit application before the local zoning authorities.

This issue has been raised in amici curiae appellate briefs. The amici curiae in this case are composed of individuals who own residential property in close proximity to the subject property. They contend that although the posting of the notice of the hearing before the planning commission on Old Chadwick Road was in technical compliance with county ordinance provisions (which provisions have not been made a part of the record here), the notice, as given here, was constitutionally defective, in that the sign was posted in an area inaccessible except by 4-wheel drive vehicle. However, since the issue has not been properly raised by a party to this proceeding, we conclude that it is not properly before us for appellate review.

"The function of an amicus curiae 'is to call the court's attention to law or facts or circumstances in a matter then before it that may otherwise escape its consideration . . . He has no control over the litigation and no right to institute any proceedings therein, he must accept the case before the court with the issues made by the parties.' 4 AmJur2d 110, 111, Amicus Curiae, § 3." *Village of North Atlanta v. Cook*, 219 Ga. 316, 322 (3) (133 SE2d 585) (1963).

*Judgment affirmed. All the Justices concur. Gregory, J., disqualified.*

DECIDED JANUARY 21, 1988.

*Thomas, Kennedy, Sampson, Edwards & Slayton, Tony L. Axam,* for appellants.

*Mark A. Johnson,* amicus curiae.

*Dick Wilson, Jr.,* for appellee.
*Kathryn M. Zickert,* amicus curiae.