BELLSOUTH MOBILITY INC.,
James Dean and Lanette
Dean, Plaintiffs,

v.

GWINNETT COUNTY, GEORGIA; F. Wayne Hill, Judy Waters, Kevin Kenerly, Tommy Hughes, Patti Muise, individually, and in their capacities as Members of the Gwinnett County Board of Commissioners; Michael C. Williams, individually and in his capacity as Director of the Gwinnett County Department of Planning and Development; and William D. Jascomb, Jr., individually and in his capacity as Director of the Development Division of the Gwinnett County Department of Planning and Development, Defendants.

No. 1:96–cv–1268–GET.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 13, 1996.

Peter M. Degnan, Scott A. McLaren, Alston & Bird, Atlanta, GA, for BellSouth Mobility, Inc., James Dean and Lanette Dean.

John Patrick O'Brien, Donna N. Kemp, Jill Ilene Seligman, Thompson O'Brien Kemp & Nasuti, Norcross, GA, Caryl B. Sumner, Gwinnett County Law Department, Lawrenceville, GA, Philip W. Horton, William E. Cook, Jr., Arnold & Porter, Washington, DC, pro hac vice, for Gwinnett County, Georgia, F. Wayne Hill, Judy Waters, Kevin Kenerly, Tommy Hughes, Patti Muise and Michael C. Williams.

John Patrick O'Brien, Donna N. Kemp, Jill Ilene Seligman, Thompson O'Brien Kemp & Nasuti, Norcross, GA, for William D. Jascomb, Jr.

## ORDER

### G. ERNEST TIDWELL, Chief Judge.

The above-styled matter is before the court on plaintiffs' appeal from the Gwinnett County Board of Commissioner's April 23, 1996 decision denying plaintiff BellSouth Mobility, Inc.'s ("BellSouth") application for a Tall Structure Permit. The matter is also before the court on: defendants' motion to exceed page limits [docket no. 5]; plaintiffs' motion to exceed page limits [docket no. 13]; and plaintiffs' motions to dismiss certain claims without prejudice [docket nos. 11 & 18].

### Factual Background

Sometime during the early part of 1995, plaintiff BellSouth determined that in order to meet the obligations imposed on it by its FCC license, it needed to improve its signal strength within the Five Forks–Trickum/Oak Road area of Gwinnett County, Georgia. BellSouth's engineers then determined that to achieve this objective, BellSouth needed to install a cellular telephone communications monopole somewhere within that area. The ideal height of the monopole, according to BellSouth's engineers, would be 197 feet above ground level.

On June 28, 1995, BellSouth entered into a lease agreement with plaintiffs Dean. That agreement gave BellSouth an option to use the Dean property ("Dean property"), which is located at 3109 Five–Forks Trickum Road, to construct, maintain, and operate a cellular communications monopole. The Dean property is zoned commercial and is currently occupied by an automotive repair shop, an auto parts store, and a tire supply company.

Under section 14–116 of the Gwinnett County Code ("Code"), a property owner who wants to erect on his or her property a wireless communication tower that is greater than fifty feet must first apply to the county for a "Tall Structure Permit." This application must be submitted to the county's department of planning and development. GWINNETT COUNTY, GA., CODE OF ORDINANCES § 14–117 (1994). Further, each application shall contain detailed plans and specifications showing: (1) the nature of the structure, (2) the structure's proposed use, (3) the height of the structure, and (4) the structure's proposed location (with all property lines clearly defined and all distances from the proposed structure to the property lines clearly marked). *Id.* The property owner must also pay a fee. *Id.*

Once the property owner has submitted the tall structure permit application, the planning and development department of the county will review it and make a written recommendation to the county board of commissioners. Although the planning and development department may recommend that the application be granted or denied, all applications must be considered by the board of commissioners, who are charged with the responsibility of making the final decision. GWINNETT COUNTY, GA., CODE OF ORDINANCES § 14–120. Indeed, according to the Code, the board of county commissioners, "in the exercise of its discretion under the police power vested in [it]," may deny any application:

where the proposed structure could interfere with or endanger the public using the existing or proposed air facilities located within the county, or where the structure to be erected could endanger the person or property of citizens of the county, or where the structure to be erected would not be compatible from an aesthetic viewpoint with existing or proposed development in

the area of the proposed facility, or where the structure to be erected would not be acceptable or after evaluation would be found to be unacceptable from an architectural standpoint with existing or proposed structures in the area.

*Id.*

On February 12, 1996, plaintiffs, through BellSouth and its counsel, filed their application for a permit to place a cellular communications monopole on the Dean property. Their application was assigned number TSP–96–002. In the application, plaintiffs described the structure that BellSouth wanted to place on the Dean property as a "197–foot monopole together with a 326 square foot unmanned single-story prefabricated concrete switch gear building." Both of these structures were to be "enclosed by an 8–foot chain link fence with 3 strands of bobwire along the top." In addition to filling out the form provided by the county, plaintiffs also attached several documents supporting their application. These documents included:

1) a report by Airspace Safety Analysis Corporation showing that the monopole presented no hazard to navigable air space in the area;

2) the option and lease agreement between BellSouth and plaintiffs Dean;

3) plaintiffs' constitutional objections concerning the standard of review for approving or denying a tall structure permit; and

4) two complete sets of boundary survey and site plans.

The boundary survey and site plans which plaintiffs submitted clearly indicate the nature of the proposed monopole structure, its proposed use, the height of the structure, and its proposed location on the Dean property. The documents also demarcate the property lines and show the distances between the monopole and the property lines.

After conducting its investigation, the planning and development department recommended that plaintiffs' permit application be approved on condition that: (1) the site remained a leased area; (2) plaintiffs install a 10–foot landscape strip, planted with evergreens, outside the fenced area along its north and west side; and (3) plaintiffs obtain all the required building and development permits. As part of the planning and development department's investigation, it solicited comment on plaintiffs' application from the Gwinnett County Department of Transportation, the Gwinnett County Department of Public Safety, and the Gwinnett County Airport Authority. Each of these agencies had no objection to plaintiffs' plans. The permit application was scheduled to be considered by the board of commissioners at a March 26, 1996 hearing.

Shortly before the board's scheduled hearing, homeowners in a residential subdivision located behind the Dean property voiced opposition to the application. The board decided to postpone the hearing from March 26, 1996 to April 23, 1996.

During this time, plaintiffs, apparently after attempting to have some discussion with local property owners, supplemented their permit application. Plaintiffs agreed to three additional conditions. They agreed to prohibit microwave equipment from being operated on the Dean property. They agreed to paint the monopole in a color selected by the adjacent residential property owners. And they agreed not to light the monopole. Plaintiffs also supplemented their application by providing the board with the structure's radio frequency (Rf) emissions specifications. Further, before the April 23, 1996 hearing, plaintiffs submitted a document to the board informing it of the additional requirements that, in their opinion, the Telecommunications Act imposed upon them.

At the April 23rd hearing, the board of commissioners permitted plaintiffs five minutes to present their case. Speaking in support of the permit application, plaintiffs' representative stated for the record that the monopole's height could be reduced from 197 feet to 177 feet in order to alleviate some of the neighbors' aesthetic concerns. He then introduced a certified appraiser's report comparing residential property values in Gwinnett County neighborhoods surrounding three other monopole sites. This report concluded that the cellular communication monopoles did not adversely affect property value.

Plaintiffs' representative also introduced a line of sight survey prepared by Aerial Instrument Research Systems which showed the visibility, from various locations surrounding the Dean property, of a red balloon floated to heights of 197 feet, 187 feet, and 177 feet. He expressed why the proposed location was important to BellSouth, and produced a list of BellSouth's unsuccessful efforts to secure other suitable sites. He concluded by urging the board to. grant plaintiffs' application subject to the six conditions to which plaintiffs had previously agreed.

After plaintiffs' five minutes had expired, the board gave those who opposed plaintiffs' tall structure permit application five minutes within which to speak. At that time, a resident of the River Oak Village subdivision, Bruce Nelson ("Nelson"), stood to speak on behalf of the residents of his subdivision, the River Oak Hills subdivision, and the Pool Creek subdivision. Nelson expressed concern that the monopole would pose a safety threat to children living in the area who might want to try to climb it or play around it. Nelson also expressed his fear that the platform and antennae attached to the top of the monopole would become dislodged during a storm with heavy winds and cause damage. Nelson also expressed health concerns about being exposed to microwave emissions on a regular basis. Further, Nelson said that at least twenty homeowners could see the proposed site from their front windows. Nelson also stated that the property owners were worried that property values in the neighborhoods would decrease. Finally, Nelson expressed his concern that the monopole would not be aesthetically compatible with existing structures and worried that BellSouth would rent parts of the tower to other companies for their use.

After hearing these statements, and thanking the speakers for participating, the board, without further discussion, voted to deny plaintiffs' application. Subsequently, by letter dated April 29, 1996, the board of planning and development formally notified plaintiffs that their "application for a Tall Structure Permit was denied at the Board of Commissioners meeting on April 23, 1996."

## Procedural Background

On May 21, 1996, plaintiffs filed their five count complaint against defendants. In Count I, plaintiffs allege that defendants violated section 704(a) of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7). In Count II, plaintiffs contend that defendants denied them equal protection under the law. Count III of the complaint alleges that defendants denied plaintiffs' rights to substantive due process. Count IV seeks mandamus relief under O.C.G.A. § 9-6-20. And in Count V, plaintiffs seek compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiffs also assert a right to have their appeal heard on an expedited basis under the TCA.

On June 25, 1996, after the court conducted a conference in its chambers, it set August 1, 1996, as the date it would hear oral argument on plaintiffs' appeal. Before that hearing, plaintiffs, on July 23, 1996, and July 31, 1996, moved the court to dismiss without prejudice many of the claims they had stated in the complaint.

Nevertheless, on August 1, 1996, the court entertained oral argument as scheduled. Because plaintiffs, through their motions for dismissal, changed the nature of their claims against defendants after defendants had filed their brief, defendants requested an opportunity to file a supplemental brief. The court granted defendants' request. Defendants have now filed their supplemental brief, and responded to plaintiffs' motions to dismiss. Accordingly, the matter is ripe for the court's review.

## Discussion

1. Defendants' motion to exceed page limits

Defendants move the court to permit them to exceed, in their brief regarding the scope of review to be afforded plaintiffs' appeal, the page limits prescribed in LR 220–1(d), NDGa. Defendants state that because there is no reported authority construing the TCA, they must provide the court with a description of the TCA's legislative background, and must give the court information concerning

the proper scope of its review under the act. Because this information will decrease the space within which they may address the merits of plaintiffs' cause, defendants contend, the court should allow them to exceed the thirty page limit prescribed in the local rules. Plaintiffs do not oppose defendants' request.

Defendants' motion to exceed page limits [docket no. 5] is GRANTED.

## 2. Plaintiffs' motion to exceed page limits

Plaintiffs move the court to permit them to exceed, in their brief supporting their appeal and complaint, the page limits prescribed in LR 220–1(d), NDGa. Plaintiffs argue that due to the length of defendants' brief, the lack of reported authority construing the TCA, the novelty of the subject matter, and the unusual procedures required by the Act, they need additional space within which to address fully the issues before the court. Defendants do not oppose plaintiffs' motion.

Plaintiffs' motion to exceed page limits [docket no. 13] is GRANTED.

## 3. Plaintiffs' motions to dismiss

Plaintiffs, in two separate motions, move the court to permit them to dismiss without prejudice, many of the claims they state in their complaint. Specifically: (1) all plaintiffs seek to dismiss the claims contained in Counts II and III of the complaint; (2) all plaintiffs seek to dismiss the claims for costs, expenses, and reasonable attorneys fees asserted in Count V of the complaint; (3) BellSouth seeks to dismiss its claim for compensatory and punitive damages under 42 U.S.C. § 1983; and (4) plaintiffs Dean seek to dismiss their claim for punitive damages.

Defendants respond that plaintiffs have used the wrong procedural vehicle to achieve their objective. Specifically, defendants contend that rather than seeking to dismiss their unwanted claims pursuant to Fed. R.Civ.P. 41(a)(2), plaintiffs should have deleted them properly by amending their complaint. Notwithstanding this procedural objection, defendants do not oppose plaintiffs' request to dismiss the claims described above. Accordingly, plaintiffs' motions to dismiss certain claims [docket nos. 11 & 18] are GRANTED.

## 4. Plaintiffs' appeal and complaint

Plaintiffs appeal the Gwinnett County board of commissioners' denial of their tall structure permit application. Plaintiffs contend that they had a clear right to the tall structure permit, and that the board of commissioners abused its discretion when it denied their application. Thus, plaintiffs argue, they are entitled to an order compelling the board of commissioners to permit BellSouth to place its monopole on the Dean property. In addition, plaintiffs contend that the board violated the TCA because its decision to deny their permit application was not supported by substantial evidence.

Defendants respond that the board of commissioners did not act arbitrarily or capriciously when it denied plaintiffs' application. Rather, defendants contend, the board simply reacted to its constituent's aesthetic, economic, and safety concerns and made a rational decision to deny plaintiffs the permit they sought. In addition, defendants claim that the issues plaintiffs present in this appeal—whether the board's decision is supported by the evidence and whether they had a clear legal right to the permit sought—are issues that are better left for Georgia courts to resolve. Thus, defendants argue, the court should abstain from reviewing the board of commissioner's decision.

### a. Plaintiffs' claims under the TCA

On February 8, 1996, President Clinton signed the TCA into law. The TCA is expansive legislation designed primarily to increase competition in the telecommunications industry. Although the TCA does not, as defendants correctly point out, completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications service facilities within their borders, it does impose some limitations.

The act, for example, provides that state or local governments which regulate the placement, construction, and modification of personal wireless service facilities: "(I) shall not unreasonably discriminate among providers

of functionally equivalent services; and (II) shall not prohibit or have the affect of prohibiting, the provision of wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(I). Nor may any state or local governmental body "regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). Finally, any request to place, construct, or modify a personal wireless service facility must be acted upon within a reasonable period of time, and "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(ii) & (iii).

By denying plaintiffs' a permit to place a wireless communication services facility on the Dean property, defendants' actions clearly fall within the ambit of the TCA. Thus, the critical question before the court is whether the board of commissioner's decision to deny plaintiffs' application is supported by "substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

As the legislative history of the TCA indicates, "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." H.R.Conf. No. 104–458, 104th Congress, 2d Sess. 208 (1996), *reprinted in* 1996 U.S.C.A.A.N. 222. Substantial evidence, as construed by the courts, means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1952). Although the court is not free to substitute its judgment for that of the board of commissioners, it must overturn the board's decision under the substantial evidence test if it "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Bickerstaff Clay Products Co., Inc. v. N.L.R.B.*, 871 F.2d 980, 984 (11th Cir.1989).

■ After reviewing the information contained in the written record before the board of commissioners, the court cannot conscientiously find that the evidence supporting the board's decision to deny plaintiffs' a tall structure permit is substantial. On the contrary, the court finds that the record evidence supports plaintiffs' application.

As noted in the court's factual summary, plaintiffs submitted numerous documents to support their application. Plaintiffs, for example, submitted the report of Airspace Safety Analysis Corporation showing that the monopole posed no hazard to Gwinnett County's navigable air space. The Gwinnett County Airport authority apparently agreed, since, in its memorandum to the planning and development department it voiced no objection to plaintiffs' plans. The record also contains memoranda from the Gwinnett County departments of transportation and public safety stating no objection to plaintiffs' application. The record also reflects that the County's planning and development department affirmatively recommended that plaintiffs' application be approved subject to three limited conditions. Plaintiffs not only promptly agreed to follow the three conditions suggested by the planning and development department, but also agreed to meet three self-imposed conditions. The record further contains expert appraiser's reports indicating the placement of monopoles has not, on other occasions, adversely affected residential property values. Finally, the record contains evidence that the monopole's radio frequency emissions would be well below the limits imposed by federal regulations.

The only record evidence supporting the board's decision is the content of Mr. Nelson's five minute testimony. In light of the compelling evidence presented by the plaintiffs, however, the court finds that Mr. Nelson's generalized concerns do not constitute substantial evidence supporting the board's decision. Accordingly, the court finds in plaintiffs' favor on their claims brought under 47 U.S.C. § 332(c)(7)(B)(v).

### b. Mandamus claims

Having determined that plaintiffs are entitled to relief under the TCA, the court must now determine what relief is appropriate. Defendants contend that the court should simply remand the matter to the board of commissioners and allow it to make a decision supported by substantial evidence. Plaintiffs, on the other hand, argue that they are entitled to an order compelling the board of commissioners to grant plaintiffs' tall structure permit application.

Section 704(a) of the TCA does not speak to the issue of what relief a court may grant to remedy violations of the act. Although it permits any person who has been adversely affected by actions that are inconsistent with its provisions to "commence an action in any court of competent jurisdiction," it does not specify an appropriate remedy. *See*, 47 U.S.C. § 332(c)(7)(B)(v). The TCA, however, does mandate that "[t]he court shall hear and decide such action on an expedited basis." *Id.* Indeed, the legislative history of the TCA makes it clear that its drafters intended that "the court to which a party appeals a decision under section 332(c)(7)(B)(v) may be the Federal district court in which the facilities are located or a State court of competent jurisdiction, at the option of the party making the appeal, and that the courts act expeditiously in deciding such cases." H.R.Conf. No. 104–458, 104th Congress, 2d Sess. 208 (1996), *reprinted in* 1996 U.S.C.A.A.N. 222.

■ In the court's view, simply remanding the matter to the board of commissioners for their determination would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis. Therefore, defendants' abstention argument notwithstanding, the court finds that the TCA vests the court with sufficient authority to grant plaintiffs' request for mandamus relief if such relief would be warranted under the circumstances.

■ Further, following the analysis set out by the Georgia Supreme Court in *Fulton County v. Bartenfeld*, 257 Ga. 766, 363 S.E.2d 555 (1988), the court finds that mandamus relief is appropriately granted to plaintiffs in this case. Like the *Bartenfeld* court, this court finds that plaintiffs have complied with all objective conditions and prerequisites set out in the Gwinnett County's Code necessary to obtain a tall structure permit. Thus, "since the board of commissioners' denial thereof constitutes an act of discretion which is lacking in any articulable, objective ground of support, [plaintiffs] have a clear right to issuance of the permit, thereby entitling [them] to issuance of the writ commanding grant of the application by the local authorities." *Bartenfeld*, 257 Ga. at 771, 363 S.E.2d 555. Accordingly, the court GRANTS plaintiffs' request for writ of mandamus and ORDERS the Gwinnett County board of commissioners to GRANT plaintiffs' application for tall structure permit number TSP–96–002.

### SUMMARY

Defendants' motion to exceed page limits [docket no. 5] is GRANTED. Plaintiffs' motion to exceed page limits [docket no. 13] is GRANTED. Plaintiffs' motions to dismiss certain claims [docket nos. 11 & 18] are GRANTED.

The Court finds that the Gwinnett County board of commissioners' decision to deny plaintiffs' tall structure permit application number TSP–96–002 is not supported by substantial evidence in a written record. Accordingly, the court finds in plaintiffs' favor on their claims brought under 47 U.S.C. § 332(c)(7)(B)(v). In addition, the court GRANTS plaintiffs' request for writ of mandamus and ORDERS the Gwinnett County board of commissioners to GRANT plaintiffs' application for tall structure permit number TSP–96–002.