**AT&T WIRELESS PCS INC., Plaintiff,**

v.

**The CITY OF CHAMBLEE and Kathy Brannon, in her official capacity as City Manager, Defendants.**

No. CIV. 1:97–CV–1050.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 28, 1997.

Kathryn M. Zickert, McCullough Sherrill, Atlanta, GA, J. Marbury Rainer, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Plaintiffs.

Joe L. Fowler, Fowler Hein Passino & Williams, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Claim and Request for Mandamus under Section 704 of the Telecommunications Act [10]. The Court has reviewed the record and the arguments of the parties, and concludes that plaintiff's request should be **GRANTED.**

### BACKGROUND

This case arises under the Telecommunications Act of 1996 (hereinafter "Telecom Act"). This act, designed to increase competition in the communications industry, has generated a number of proposals to construct communications towers by companies seeking to enter the personal wireless services market. These proposals typically create a conflict between local zoning authorities and telecommunications companies attempting to take advantage of the opportunities created by the Telecom Act.

Plaintiff in this case, AT&T, is licensed by the Federal Communications Commission ("FCC") to provide personal wireless communications services in Georgia. (Pl. Request for Mandamus [10] at 2.) In order to meet the service coverage conditions imposed by its FCC license, plaintiff proposed the construction of a communications tower in the City of Chamblee. (*Id.*) On January 13, 1997, plaintiff applied for a permit to construct a 140–foot communications tower on property zoned "light industrial." (Permit Application, attached to Pl. Request for Mandamus [10] at Ex. "C.") Three days later Kathy Brannon, the City Manager, denied the application, because of its purported violation of several provisions of Chamblee's Zoning Ordinance. (Denial Letter, attached to Pl. Request for Mandamus [10] at Ex. "F.") Plaintiff appealed this decision to the City Council, which held two sessions to consider the application and then denied the appeal. (Appeal Denial, attached to Pl. Request for Mandamus [10] at Ex. "O.") Plaintiff challenges defendant's denial of its permit application under § 704 of the Telecom Act, which provides for expedited court review of the denial of a telecommunication company's request for a permit to construct personal wireless communications services.[1]

### DISCUSSION

#### I. Standard of Review

The Telecom Act does not eradicate, but certainly limits, a local zoning authority's

---

1. This code section provides that:
   any person adversely affected by any final action by a ... local government ... that is inconsistent with this subparagraph may, within 30 days after such action ... commence an action in any court of competent jurisdiction. The court shall hear and decide such an action on an expedited basis.
   47 U.S.C. § 332(c)(7)(B)(v).

ability to regulate the placement and construction of personal wireless service facilities, such as communications towers. The act prohibits a local government from unreasonably discriminating among providers of personal wireless services, for example, or from taking any action which has the effect of prohibiting the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(I). More relevant for the Court's purposes, the act provides that "any decision by a ... local government ... to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Plaintiff claims that defendant's decision to deny its request to construct a communications tower in the City of Chamblee is not supported by substantial evidence in the record.[2]

Although the Telecom Act does not define the term "substantial evidence," several courts have recognized that, as used in the act, the "phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." *BellSouth Mobility Inc. v. Gwinnett County*, 944 F.Supp. 923, 928 (N.D.Ga. 1996) (Tidwell, J.)(quoting legislative history of Telecom Act, H.R.Conf.No. 104–458, 104th Congress, 2d Sess. 208 (1996)). *See also, Sprint Spectrum L.P. v. Jefferson County*, 968 F.Supp. 1457, 1468–69 (N.D.Ala.1997); *Illinois RSA No. 3, Inc. v. Peoria*, 963 F.Supp. 732, 743 (C.D.Ill.1997) ("term 'substantial evidence' ... is derived from doctrines of administrative law and its meaning is well established."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). As the Eleventh Circuit has further elaborated, this standard is "not so stringent as a preponderance but does mandate a harder look

at agency action than the arbitrary and capricious standard." *Color Pigments Mfrs. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 16 F.3d 1157, 1160 (11th Cir.1994).

In reviewing defendant's decision under the substantial evidence standard, the Court must search the whole record, taking into account both the evidence that supports the decision and "that which fairly detracts from it." *Bickerstaff Clay Products Co. v. N.L.R.B.*, 871 F.2d 980, 984 (11th Cir.), *cert. denied, Local Union No. 246 v. Bickerstaff Clay Products, Inc.*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). Although defendant correctly points out that the Court cannot substitute its own judgment for that of defendant, the Court must set aside defendant's decision if it is unable to conscientiously find that the decision has a sound factual basis and accounts for relevant evidence which contradicts it. *Northport Health Services, Inc. v. N.L.R.B.*, 961 F.2d 1547, 1550 (11th Cir.1992).

## II. *Plaintiff's Permit Application*

As noted, plaintiff proposed construction of its tower on property zoned "light industrial." Defendant has a specific ordinance governing the construction of communications towers which authorizes the placement of such structures on property zoned industrial as long as certain requirements are met. (*See* Tower Ordinance, attached to Pl. Request for Mandamus [10] at Ex. "B.") These requirements are:

(1) that the tower is set back from any existing off-site residential structure at least a distance equal to the height of the tower;

(2) that certain aesthetic guidelines are met, including a galvanized steel finish, and a design that will blend into the natural setting as much as possible;

(3) that current regulations of the FAA, the FCC, and any other relevant feder-

---

**2.** Plaintiff's complaint also includes claims under 42 U.S.C. § 1983, the Georgia mandamus statute, and the Georgia Constitution. Plaintiff, however, is only entitled to, and only seeks expe-

dited review of its claims under the Telecommunications Act. (*See* Pl. Reply in Supp. of Request for Mandamus [12] at 2.)

al agency with the authority to regulate communications towers are satisfied; and

(4) that building codes and standards promulgated by the Electronic Industry Association are met.

(*Id.* at § 18–152.) It is undisputed that plaintiff's application demonstrated compliance with all of these requirements. Three days after its submission, however, Ms. Brannon denied plaintiff's request for a construction permit on the following grounds:

(1) Section 111 of the Zoning Ordinance allows only one principal building, structure or use and its "customary buildings and uses" per lot. The proposed site is currently being used by MazMart, an auto parts supplier, for which a communications tower would not constitute a "customary accessory building or use;"

(2) Section 210 of the Zoning Ordinance limits use of "light industrial" property to industrial operations and processes that are not objectionable in terms of noise, vibration, smoke, dust, gas, fumes, or odors and that do not create fire or explosion hazards or other obnoxious conditions. The telecommunications tower would create an obnoxious condition; and

(3) Section 502 of the Zoning Ordinance imposes a 150–foot height restriction on any structure within the zoning district for the DeKalb–Peachtree Airport, and the Chamblee building inspector is unable to determine from AT&T's plans whether the proposed tower exceeds this height limitation.

(Denial Letter, attached to Pl. Request for Mandamus [10] at Ex. "F.")

Plaintiff timely appealed Ms. Brannon's denial of its permit application to the Chamblee City Council. (Notice of Appeal, attached to Pl. Request for Mandamus [10] at Ex. "G.") The Council discussed plaintiff's appeal during several work sessions, which focused primarily on Chamblee residents' ob-

jections to the construction of the tower, as opposed to plaintiff's alleged noncompliance with the Zoning Ordinance. (*See generally,* Hearing Transcripts, attached to Pl. Request for Mandamus [10] at Exs. "H," "I," and "N.") All of the questions asked of plaintiff at the first session, on February 13, 1997, related to plaintiff's ability to move the tower from its proposed location at the back of the site to a new location at the front of the site, in order to appease some residents. (*See* Hearing Transcript, attached to Pl. Request for Mandamus [10] at Ex. "H.") Although plaintiff demonstrated to the Council that its proposal met each requirement of defendant's Tower Ordinance, the Council did not entertain any significant discussion of plaintiff's compliance or of Ms. Brannon's grounds for denying its application. (*Id.* at 22.)

During the Council's second meeting on the issue, on February 18, 1997, plaintiff announced its plan to relocate the tower to the front of the property, as requested by the Council at the February 13 meeting. (*See* Hearing Transcript, attached to Pl. Request for Mandamus [10] at Ex. "I.") At this meeting plaintiff again attempted to demonstrate its compliance with the Tower Ordinance, as well as other relevant regulations such as the airport height limitation. (*Id.* at 2–5.) The Council's response was similar to its response of February 13, ignoring the issue of compliance and focusing on citizens' concerns that the tower was an unnecessary and unsightly addition to their neighborhood. (*See id.* at 9.) Two landowners also expressed concern that the location of the tower would interfere with helicopter traffic above their homes. (*Id.* at 10–12.) At the conclusion of this session, the Council deferred its decision on the issue until March 18. (*Id.* at 26–27.)

After the February 18 meeting, Ms. Brannon, as well as the Chamblee Airport Director, Mr. Tudor, wrote letters to the FAA requesting reconsideration of its approval of plaintiff's tower site, specifically calling the agency's attention to the issue of helicopter traffic. (*See* Exs. "K," and "L" to Pl. Request for Mandamus [10].) In response, the FAA amended its approval to require the

tower to be marked with lights. (FAA Approval, attached to Pl. Request for Mandamus [10] at Ex. "M.") After receiving FAA approval of the second proposed site, plaintiff had, for the second time, satisfied all the requirements of defendant's Tower Ordinance.

Plaintiff presented a current site plan demonstrating its compliance with the ordinance to the Council at its final session on plaintiff's appeal on March 18, 1997. (*See* Hearing Transcript at 4, attached to Pl. Request for Mandamus [10] at Ex. "N.") Specifically addressing the helicopter safety issue, plaintiff pointed out that its tower was approximately 670 feet from the center of the helicopter corridor, and that a buffer of trees 70–80 feet tall screened the tower from the site and would restrict helicopters from descending to its height. (*Id.* at 6–8.) Plaintiff also reminded Council members that the proposed tower location was well outside the buffer zone established by the FAA to ensure safe helicopter operation, and even within Mr. Tudor's previously stated safety zone. (*Id.* at 8.)

Despite plaintiff's demonstrated compliance with the Tower Ordinance, and the overwhelming evidence presented in support of its application, the Council voted unanimously to deny plaintiff's appeal and its request for a permit to construct a communications tower. (*Id.* at 14.) The Council justified its denial by pointing to: (1) airport zoning height limitations which had been raised in the initial denial of plaintiff's application, and (2) concerns regarding the tower's interference with helicopter traffic. (*See* Written Denial, attached to Pl. Request for Mandamus [10] at Ex. "O.")

III. *Substantial Evidence to Support Denial*

Defendant has asserted, throughout the permitting process, four reasons to support its decision to deny plaintiff's application: (1) the "sole use" restrictions of Zoning Ordinance § 111; (2) the "obnoxious condition" prohibition of Zoning Ordinance § 210; (3) the airport height limitations of Zoning Ordinance § 502; and (4) general concerns regarding helicopter interference. Having considered the record, as well as defendant's stated reasons for denying plaintiff's permit, the Court finds that defendant's decision is not supported by substantial evidence.

**A. "One Principal Use" Restriction**

■ Chamblee Zoning Ordinance § 111 provides that "only one principal building, structure or use and its customary accessory buildings and uses shall be permitted on any lot." (Zoning Ordinance, attached to Pl. Request for Mandamus [10] at Ex. "A.") It is true that the site on which plaintiff proposes to construct its communications tower is already occupied by MazMart, an auto parts supply store, and that ordinarily one would not consider a communications tower a "customary accessory building or use" for such a business. In denying plaintiff's application on the basis of the "one principal use" restriction, however, defendant ignored a provision of its Zoning Ordinance specifically excepting communications towers from the operation of this rule. This provision states that:

> Antennas and towers may be considered either principal or accessory uses. A different existing use or an existing structure on the same lot shall not preclude the installation of an antenna or tower on such lot.

(Tower Ordinance at § 18–152(b), attached to Pl. Request for Mandamus [10] at Ex. "B.") The "one use" restriction is thus an obviously invalid justification for rejecting plaintiff's application.

**B. Obnoxious Condition**

■ Section 210 of Chamblee's Zoning Ordinance restricts the "light industrial" districts of the city to "industrial operations and processes that do not create obnoxious conditions." (Zoning Ordinance, attached to Pl. Request for Mandamus [10] at Ex. "B.") The ordinance defines obnoxious conditions as things that "are objectionable in terms of the

emission of noise, vibration, smoke, dust, gas, fumes, or odors [or] create fire or explosion hazards." (*Id.* at § 210.) Defendant's sole basis for denying plaintiff's permit pursuant to § 210 of the Zoning Ordinance is Ms. Brannon's unsupported statement of "[her] determination that this [tower] creates an obnoxious condition." (Denial Letter, attached to Pl. Request for Mandamus [10] at Ex. "F.") Neither Ms. Brannon, nor any other council member, can point to any evidence suggesting that the communications tower would emit anything offensive or create any hazard that might be characterized as constituting an "obnoxious condition." Defendant thus completely fails to rebut plaintiff's demonstration that as "an unmanned wireless facility," the communications tower it proposes "produces no noise, no smoke, no smell, none of that stuff" which ordinarily might create an obnoxious condition (Hearing Transcript at 8, attached to Pl. Request for Mandamus at Ex. "H.") The Court can find *no* evidence, much less substantial evidence, that plaintiff's proposed tower would create an "obnoxious condition," and therefore cannot uphold defendant's decision pursuant to § 210 of Chamblee's zoning ordinance.

## C. Airport Height Limitations

■ Section 502 of defendant's zoning ordinance prohibits the construction of any structure at a height above 150 feet within a 7,000 foot radius of the airport. (Zoning Ordinance, attached to Pl. Request for Mandamus [10] at Ex. "A.") Apparently, plaintiff's proposed tower site is within the 7,000 foot radius and is subject to the provisions of § 502. Once again, however, defendant cannot point to any evidence which suggests that the tower would violate this provision and, in fact, all of the evidence in the record suggests otherwise. The site plan submitted to defendant and to the FAA clearly indicat-

ed that the tower was to be 140 feet high. (*See* Exs. "C," and "J" to Pl. Request for Mandamus [10].) Indeed, Ms. Brannon even acknowledged, in a February 20, 1997 letter to the FAA, that "the tower remains within the height restrictions for this area ..." (Brannon Letter, attached to Pl. Request for Mandamus [10] at Ex. "K.") Given plaintiff's unquestionable intent, throughout the permitting process, to construct a 140-foot tower, the vague statement that "the building inspector is unable to determine from the site plan that this structure will not exceed the airport height limitation" provides an inadequate basis on which to deny plaintiff's application pursuant to § 502 of the Zoning Ordinance.

## D. Helicopter Interference

As plaintiff points out, defendant's Tower Ordinance does not contain any requirements related to helicopter interference besides FAA approval.[3] (*See* Pl. Request for Mandamus [10] at 22.) Still, the Court might be willing to consider potential helicopter interference to be a valid reason for denying plaintiff's permit if there was *any* evidence in the record suggesting that helicopter interference is a genuine and reasonable concern of defendant, or less evidence in the record to the contrary.

Defendant's helicopter safety justification for denying plaintiff's application is only supported by the opinions of a few Chamblee citizens, and is contradicted by the statements of the Chamblee Airport Director, Mr. Tudor. At the February 18, 1997 work session on plaintiff's appeal, several citizens expressed a general concern that the tower's position would create a potential for helicopter accidents. One citizen, for example, stated:

> I don't know how safe or unsafe this is. I do know that the helicopters fly over my

---

3. The FAA issued such approval for both the first and second locations of the proposed tower. (*See* Exs. "D," "J," and "M" to Pl. Request for Mandamus [10].) Before approving either site, the FAA was required to conduct a study to consider the "effect of the proposed site upon the operation of air navigation facilities and the safe

and efficient utilization of navigable air space." 14 C.F.R. § 77.35(a). The regulations direct the FAA to apply such study to "the use of navigable airspace by aircraft," including any "device intended to be used for flight in the air." 14 C.F.R. § 77.21.

house, fly over this projected location, this tower. And they're less than 140 feet at times.

(Hearing Transcript at 16, attached to Pl. Request for Mandamus [10] at Ex. "I.") Other citizens who had observed helicopters flying over their homes expressed similar generalized concerns regarding helicopter interference, as did Mr. Tudor. (Hearing Transcript at 12, attached to Pl. Request for Mandamus [10] at Ex. "I." *See also, generally,* Ex. "L" to Pl. Request [10].) Defendant has never attempted to substantiate those concerns, however, or even demonstrate that they are reasonable.

In fact, all of the objective evidence in the record suggests that defendant's concerns about helicopter interference are simply an attempt to find an acceptable justification for keeping plaintiff's communications tower out of Chamblee. Both Ms. Brannon and Mr. Tudor specifically requested that the FAA reconsider its approval of plaintiff's tower site in light of the helicopter traffic issue, which was first raised at the February 18, 1997 work session on plaintiff's appeal. (*See* Exs. "I," and "L" to Pl. Request for Mandamus [10].) Ms. Brannon sent a letter to the FAA, stating that: "[I]n order to ensure the safety of the residents of this City, I'm requesting that calculations for helicopter services be performed [on the site] location." (Brannon Letter, attached to Pl. Request for Mandamus [10] at Ex. "K.") In response, the FAA amended its approval of the tower by requiring lights, but never indicated, even after performing the specific calculations requested by Ms. Brannon, that the location of plaintiff's tower would create a danger of helicopter interference. (FAA Approval, attached to Pl. Request for Mandamus [10] at Ex. "M.")

■ Moreover, plaintiff demonstrated in the March 13 work session that its proposed tower would be well outside of the 250–foot helicopter corridor buffer zone that FAA regulations require, and even outside of the 400–foot distance which Mr. Tudor had previously indicated as acceptable. (*See* Hearing

Transcript at 8, attached to Pl. Request for Mandamus [10] at Ex. "N.") The generalized concerns of a few citizens who have seen helicopters fly over their homes, and have drawn the conclusion that plaintiff's tower would create a danger of helicopter interference, simply do not constitute "substantial evidence" in the record to support this justification for denying plaintiff's permit application. *Accord, BellSouth Mobility,* 944 F.Supp. at 928 ("In light of the compelling evidence presented by the plaintiffs ... [a citizen's] generalized concerns do not constitute substantial evidence supporting the board's decision.")

## IV. *Appropriate Relief*

■ The Court's review of the record "reveals that the [City's] sole basis for denying the Petition was little more than that numerous people opposed it." *Illinois RSA No. 3,* 963 F.Supp. at 745. As understandable as this opposition is, it does not constitute "substantial evidence" under the Telecom Act. *Id.* Accordingly, the Court finds that defendant has violated the Telecom Act, and that plaintiff is entitled to relief.

■ Relief in the form plaintiff has requested, a writ of mandamus directing defendant to issue a building permit to plaintiff, is authorized under the Telecom Act, and particularly appropriate in this case. *Western PCS II Corp.,* 957 F.Supp. at 1239–1240; *BellSouth Mobility, Inc.,* 944 F.Supp. at 929. Plaintiff has demonstrated its compliance with all valid requirements necessary to receive a construction permit, and defendant has demonstrated its reluctance to issue this permit, even when informed by its City Attorney that its denial would likely violate the Telecom Act. (*See* Hearing Transcript at 9, attached to Pl. Request for Mandamus [10] at Ex. "I.") The following interchange between a citizen and the Council is revealing:

Mr. Johnson: I've never really asked for anything from the counsel, but I live right back of that area there.... We put up with the gypsum plant, with all the dust. We put up with the airport. We put up

with a lot of things. I see this here as more of an invasion of our property.... There is all kinds of great things going on, and I'm concerned that this is just another area or another way—I don't care how big AT&T is, I don't care how big anything is, but it's an invasion of citizens.... '

Councilman Brown: Mr. Johnson, you people elect these people to go up and serve y'all and you can believe they're going to have your interest at heart.

Councilman Floyd: How many lawsuits do we have now? What's one more?

(Hearing Transcript at 31–32, attached to Pl. Request for Mandamus [10] at Ex. "H.")

Although there are other forms of relief that the Court could consider, such as a remand to the Council to reconsider the application, under these circumstances, the Court finds that a remand "would be a waste of time and would frustrate the Telecom Act's direction to expedite these proceedings." *Illinois RSA No. 3*, 963 F.Supp. at 746. Accordingly, the Court will grant the relief requested by plaintiff, and order defendant to issue a building permit for plaintiff's proposed tower.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's Claim and Request for Mandamus under § 704 of the Telecommunications Act [10]. Having thereby granted plaintiff all of the relief requested in its complaint, the Court concludes this litigation and directs the clerk to close this case.