GROUP EMF, INC., Plaintiff,

v.

COWETA COUNTY, Defendant.

No. Civ.A. 3:98–CV–130–JTC.

United States District Court,
N.D. Georgia,
Newnan Division.

June 14, 2000.

**1336**

George C. Rosenzweig, Rosenzweig, Jones, MacNabb, Newnan, Georgia, for plaintiff.

Kimberly Houston Ridley, Hawkins & Parnell, Atlanta, Georgia, for defendant.

### ORDER

CAMP, District Judge.

This case is before the Court on the Parties' cross-motions for partial summary judgment, [# 6–1] and [# 12–1], as well as Plaintiff's Motion to Exceed Page Limit [# 11–1].

## I. BACKGROUND

The issue for decision in this case presents a conflict between national telecommunications policy, as expressed in the Telecommunications Act of 1996, and the land use decisions of local government. As a result of rapid changes in the telecommunications industry, Congress passed the Telecommunications Act and the President signed it into law on February 8, 1996. Among other purposes, Congress enacted the legislation to extend telecommunications services to all regions of the nation and to encourage lower prices, better quality, and greater choice for consumers. One of the new technologies which Congress intended to encourage is wireless digital communications and personal communications services ("wireless" or "PCS"). Though PCS is based on cellular wireless technology, it has different operating characteristics than previous versions of cellular service. Digital and PCS technology provide numerous advantages to consumers; however, they require many more antennae than traditional cellular infrastructures. Furthermore, to maintain a signal, buildings and trees cannot block the antennae which relay the signals.

The rapidly proliferating towers for wireless service have brought the service providers into conflict with local zoning authorities. In order to comply with the Telecommunications Act's policy that wireless service be accessible and universal, many towers will necessarily be required to be placed in residential and similar zoning districts. Although consumers may want service on demand, at an affordable price, few want the service's towers placed in their neighborhoods. Local zoning officials have understandably become more and more concerned about the proliferation of towers and the geometric increase in requests for sites. For further discussion of this problem, see Sara A. Evans, *Wireless Service Providers v. Zoning*

*Commissions, Preservation of State and Local Zoning Authority Under the Telecommunications Act of 1996,* 32 Ga.L.Rev. 965 (1998); Kevin M. O'Neill, *Wireless Facilities are a Towering Problem: How Can Local Zoning Boards Make the Call Without Violating Section 704 of the Telecommunications Act of 1996?,* 40 Wm. & Mary L.Rev. 975 (1999).

Congress anticipated this tension and tried to strike a proper balance between federal and local government concerns in the 1996 Act. On one hand, Congress leaves the authority over decisions regarding the placement and construction of wireless service facilities with the local zoning authority. On the other hand, Congress places several restrictions upon local government's exercise of that authority: the local government shall not unreasonably discriminate among providers; shall not prohibit the provision of personal wireless services; shall act upon applications within a reasonable period of time; shall deny any applications in writing and supported by substantial evidence in the record; and shall not base denials upon "the environmental effects of radio frequency emissions" that comply with FCC regulations. 47 U.S.C. § 332(c)(7)(B).

To effectuate the policy of the Act, telecommunications companies and local government must work closely together. When they fail to do so, Congress gives jurisdiction to both state and federal courts to review decisions for compliance with the requirements of the Act. This case presents Plaintiff's claim that Coweta County violated the Act when the County denied its application for a special use permit to erect a 150 foot antenna in an area zoned "rural reserve." Both Plaintiff and the County have moved for partial summary judgment presenting the issue of whether Coweta County's decision to deny the permit in question is consistent with the mandate of the Telecommunications Act.

Plaintiff, Group EMF, Inc., is a Georgia corporation that develops tower sites and leases tower space to broadcasters and wireless communication service providers. In connection with this business, Group EMF proposed to construct a 150 foot monopole tower in Coweta County on property owned by the First Church of Nazarene. On August 18, 1998, the Coweta County Board of Commissioners voted to deny Group EMF a permit to construct the proposed tower.

Within thirty days of receiving notice of the Board's decision, Group EMF filed suit against Coweta County alleging that the denial of the permit violated Plaintiff's rights pursuant to the Telecommunications Act of 1996, as well as other federal and state provisions. Plaintiff seeks a writ of mandamus directing the County to grant the permit to construct the tower, declaratory relief, damages, and attorney's fees against Coweta County. Plaintiff has requested expedited review of its claim pursuant to the Telecommunications Act.

Consistent with Group EMF's request for expedited relief, Defendant Coweta County promptly moved for partial summary judgment on Plaintiff's claim under the Telecommunications Act. Plaintiff responded with a cross motion for partial summary judgment on the same claim. The motions are now fully briefed and ripe for decision.

## II. SUMMARY JUDGMENT

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Parties agree that there is no genuine issue as to any material fact relating to Plaintiff's claim under the Telecommunications Act and

that summary judgment is appropriate on the claim.

## B. The Telecommunications Act of 1996

The Telecommunications Act of 1996 generally preserves the authority of local zoning boards with respect to wireless facilities; however, it does place limits on that authority. *Id.; see also AT&T Wireless PCS, Inc. v. City of Chamblee*, 10 F.Supp.2d 1326, 1328–29 (N.D.Ga.1997) (Carnes, J.). For example, the Telecommunications Act prohibits a local government from unreasonably discriminating among providers of wireless services or from taking any action which has the effect of prohibiting the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(I). The Act also provides that "any decision by a ... local government ... to deny a request to place, construct, or modify personal wireless service facilities *shall be in writing and supported by substantial evidence contained in a written record.*" 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). In this case, Group EMF claims that the County's decision to deny its permit was not supported by substantial evidence in the written record of the proceedings before the County.

Although the Telecommunications Act does not define the phrase "substantial evidence," this phrase represents the traditional standard used for judicial review of agency actions. *See e.g., BellSouth Mobility*, 944 F.Supp. at 928 (quoting the legislative history of the Telecommunications Act); *AT&T Wireless*, 10 F.Supp.2d at 1329 ("several courts have recognized that ... the phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions.").

■ Under this standard, "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71

S.Ct. 456, 95 L.Ed. 456 (1951). While not as stringent as preponderance of the evidence, it does mandate "a harder look" at agency action than the "arbitrary and capricious" standard. *Color Pigments Manufacturers Ass'n, Inc. v. Occupational Safety & Health Administration*, 16 F.3d 1157, 1160 (11th Cir.1994).

■ In reviewing the decision of Coweta County, the Court must consider all the evidence, including that opposed to the County's decision. The Court must overturn the Board's decision if it "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *BellSouth Mobility*, 944 F.Supp. at 928 (quoting *Bickerstaff Clay Products, Inc. v. NLRB*, 871 F.2d 980, 984 (11th Cir.1989)).

■ The requirement of the Telecommunications Act that local decisions be supported by substantial evidence "does not affect or encroach upon the substantive standards to be applied under established principles of state and local law" in reaching those decisions. *AT & T Wireless Services of Florida, Inc. v. Orange County*, 23 F.Supp.2d 1355, 1358–59 (M.D.Fla. 1998). Nor is the Court free to substitute its judgment for that of the County. The Court is limited to determining whether substantial evidence supports Coweta County's decision as stated in writing to Plaintiff.

## C. Decision of the Coweta County Board of Commissioners

In October 1997, Coweta County enacted an ordinance regulating the placement and design of "transmission towers with antennas and related appurtenances." This ordinance requires entities wishing to construct "private transmission towers" within the County, in areas other than those zoned heavy commercial, light industrial, or industrial, to apply for a "special use permit." The ordinance sets forth

specific criteria to be considered by the Coweta County Board of Commissioners in determining whether to approve or deny an application for a special use permit, while vesting the Board with discretion to relax or reduce certain requirements to serve the goals of the ordinance.

Among the factors to be considered by the Board are: (1) the height of a proposed tower or its "fall zone;" (2) the proximity of a proposed tower to residential structures or incompatible uses such as airports; (3) the nature of uses of surrounding property; and (4) the availability of suitable existing towers and other structures. The ordinance provides that no new tower will be approved unless the applicant can demonstrate that no existing tower or structure can accommodate the applicant's proposed antenna. An applicant may make this showing in several ways, including by demonstrating that no existing structures are located within the geographic area required to meet the applicant's engineering requirements.

Group EMF submitted an application for a special use permit to construct a 150 foot monopole tower on heavily wooded property owned by the First Church of Nazarene, which is zoned rural reserve. The Coweta County Planning Department first reviewed Group EMF's application in order to make a recommendation to the County Board of Commissioners. On May 25, 1998, the Planning Department notified Group EMF that it had recommended to the Board that the application be denied. The Department cited three reasons for the recommendation.

First, the Department noted that an off-site storage facility and garage of a nearby resident was within the fall zone of the proposed tower because it was within 150 feet of the 150 foot tower. Thus, the Planning Department determined that the tower's fall zone encroached upon the residential property and was a safety hazard. The Department also noted that the residential owner could add on to his existing structure and increase the encroachment. Second, the Department found that an ex-

isting tower at the "Thomas Crossroads" site should be considered for colocation of the transmission equipment intended for the proposed tower. Third and finally, the Department found that the proposed tower was to be located within 4,975 feet of a private airstrip on the extended center line of the runway, which would cause an unnecessary flight risk.

A hearing before the Coweta County Board of Commissioners on Group EMF's application was originally scheduled for July 16, 1998. Although the Board heard some evidence on the application at that time, the hearing was postponed at Group EMF's request until August 13, 1998 to allow the applicant additional time to address the concerns raised by the Planning Department. Group EMF submitted voluminous materials to the Board of Commissioners and presented evidence at the second hearing. On August 18, 1998, the Board of Commissioners voted to accept the recommendation of the Planning Department and to deny Group EMF's application for a special use permit for the same reasons expressed by the Planning Department. Group EMF was notified of the basis for the decision in writing by the Planning Department on August 24, 1998. Group EMF filed the instant suit against Coweta County on September 11, 1998.

Based upon the evidence in the record before the Coweta County Board of Commissioners, the Court must determine whether the County's decision to deny a special use permit to Group EMF was supported by "substantial evidence in a written record" as required by the Telecommunications Act of 1996.

### 1. The Fall Zone

█ The first reason cited for the rejection of the special use permit relates to the "fall zone" of the proposed tower. The "fall zone" refers to the area surrounding the tower in which the tower would fall in the event of a structural failure. The Board rejected Group EMF's application for a special use permit, in part, due to the

relationship of the fall zone to a neighboring residential structure. Specifically, the Planning Department stated:

The tower does not meet Section 69.5 Setbacks and Separation. The fall zone encroaches on an off-site residential structure. The adjacent property owners could add on to the existing structures increasing the encroachment.

Section 69.5 of the Coweta County tower ordinance contemplates a "fall zone" for a tower equal to the height of the tower. As noted by the Planning Department in its recommendation to the Board, the fall zone is considered a "safety area" around a tower. It is undisputed in the record that a portion of a garage/storage building for the residence adjacent to the church site is within 150 feet of the proposed 150 foot monopole.

At the hearing on its application for a special use permit, Group EMF submitted voluminous materials to the Coweta County Board to respond to the Planning Department's concerns regarding the placement of the tower and the safety of the neighboring property. Group EMF submitted engineering reports demonstrating that the proposed tower would not present a safety risk to the neighboring residential structure. These materials included photographs of wireless towers still standing following hurricanes and tornadoes, thus demonstrating the low probability that such a structure would fall under any circumstances.

In addition, Group EMF offered the testimony of Mr. Harry Stamper, an engineer with degrees in mechanical, industrial, and systems engineering, in order to present the findings of the engineering reports and to answer any questions by the Board. Mr. Stamper testified that the proposed tower had been designed to fall completely within the premises leased by the company in the highly unlikely event that the tower did fall. (Hearing Transcript August 13, 1998 p. 77). Mr. Stamper explained that he had not seen a tower fall in over a thousand installations, but that the proposed tower was designed to "see-saw upon itself, not to fall over in one member, but to fall into pieces." (Hearing Transcript August 13, 1998 p. 78). Thus, he explained that the "fall zone" was not equal to the height of the tower as contemplated by the Coweta County ordinance, but was completely contained within the leased premises and would not encroach on the neighboring property. The engineering reports submitted to the Board supported this testimony. No evidence contradicted this conclusion.

Despite Coweta County's representation in its brief that the Board felt that "man-made anything is not foolproof," the written record demonstrates that the Commissioners accepted as accurate Mr. Stamper's testimony regarding the design of the tower and its fall zone at the hearing. (Hearing Transcript August 13, 1998 pp. 22–23; 77–78). The only requirement with respect to the design of the tower and the fall zone that the Board raised following Mr. Stamper's testimony was an engineer's certification. Mr. Stamper responded that an engineering certificate regarding the tower's design would be provided. Other than the generalized concern by a citizen that nothing "man-made" is foolproof, no other evidence regarding the tower's structure or the fall zone was offered at the hearing.

Despite the Board's explicit agreement that the tower's fall zone would be contained within the property leased to Group EMF, the Board's first basis for denying the special use permit was that the fall zone of the tower would "encroach" on the neighboring residential structure. Not only is this determination not supported by substantial evidence when viewing the record in its entirety, it is unsupported by any evidence. In fact, at the hearing, the Board agreed with Group EMF that there was no concern that the tower would fall on the neighboring property. (Hearing Transcript August 13, 1998 pp. 22–23; 77–78). The Board declined the opportunity to question Mr. Stamper further about this issue. In addition, the generalized con-

cern of citizens that "man-made anything is not foolproof" does not constitute "substantial evidence" under the Telecommunications Act. *BellSouth Mobility*, 944 F.Supp. at 928. Accordingly, no "substantial evidence in a written record" supports the finding that the tower's fall zone would encroach on a residential structure.

In a similar case, a Florida company sought a "conditional use permit" to construct a 400 foot telecommunications tower on property zoned for agricultural residential use. *OPM–USA–Inc. v. Brevard County, Florida*, 7 F.Supp.2d 1316 (M.D.Fla.1997). During review by the planning office of Brevard County, the planning staff noted that the proposed site for the tower was comprised primarily of wetlands and that "towers are a commercial use not permitted in a wetland by the Comprehensive Plan and County Code." *OPM*, 7 F.Supp.2d at 1318. Nonetheless, the planning department recommended approval of the permit, finding that this type of conservation issue was typically handled at the site plan stage rather than in the zoning stage of the process.

At a hearing before the Board of Commissioners, the applicant presented voluminous materials regarding the structure of the proposed tower. Specifically, the company presented a "certified set of structural drawings by the engineer of record ... showing that in a catastrophic event, the tower would fall solely on the twenty acres of property supporting it." *Id.* at 1319.

The only opposing evidence consisted of several individuals who spoke in opposition to the tower. One argued that the tower should not be permitted in a wetlands area. Another claimed that the tower would create an inconsistent commercial use of property in a residential area and that it would constitute a threat to the safety and welfare of the neighborhood. *Id.* at 1320. After considering the evidence, the Board issued a decision denying the application for the conditional use permit. In its amended written decision, the Board found that the permit should not be

granted for several reasons, including "the proximity of the tower to the abutting residential property" and the fact that the "proposed commercial use [was] inconsistent with the comprehensive plan's wetlands policies." *Id.* at 1322–23.

The applicant promptly brought suit under the Telecommunications Act arguing that the Board's decision was not based upon substantial evidence in a written record. The district court agreed with the company and ordered the Board to issue the conditional use permit.

With respect to the proximity of the proposed tower to abutting residential property, the court found that, in light of the engineer's certification that the tower would fall only on the tower property, "there was no evidence presented of any valid safety considerations with nearby residences." *Id.* at 1324. With respect to the County's concern over the surrounding residential area, the court noted that:

> towers cannot always be compatible with the character of the surrounding property. If this were so, all towers would be grouped together. However, in order to meet the increasing demand by consumers for wireless services, telecommunications towers have to be separated and located in areas in which they have not been traditionally located, such as residential, commercial, and rural areas.

*Id.* at 1325. Thus, there was no substantial evidence to support the Board's denial of the conditional use permit based upon the proximity of the surrounding residential property.

The court also found that the Board's decision with respect to the wetlands issue was unsupported by substantial evidence. The Board argued that the only evidence in the written record conclusively demonstrated that the proposed site was within a wetlands area and that towers were a commercial use not permitted in wetlands by the Comprehensive Plan and County Code. Thus, the Board contended that its denial on this basis was clearly supported by substantial evidence. However, the Court

did not find this dispositive in view of the Telecommunications Act. *Id.* at 1325.

The court noted that OPM submitted significant evidence regarding its ability to address any conservation issues arising from the proximity of the wetlands. OPM also offered to present testimony from a wetlands expert regarding the impact of the tower on any surrounding wetlands. The Board did not make any inquiries of this expert regarding the wetlands. Because the Board had no questions regarding the wetlands issue and gave no "indication that it would base its denial of OPM's application on the wetlands issue," the court found that the decision to deny the conditional use permit on this basis was also made without substantial evidence in the written record.

The circumstances of the *OPM* case are instructive in addressing Group EMF's contentions regarding the setback requirement in the instant case. As in the Florida case, Group EMF presented the testimony of an engineer, certifying that the proposed tower would only fall, if at all, within the confines of the leased premises. The Coweta County Board not only failed to question this evidence, it accepted it on the written record. There was no other evidence offered regarding the structural integrity of the proposed tower or the tower's fall zone. Accordingly, as in *OPM,* the Coweta County Board's decision to deny the permit based on the tower's proximity to a residential structure was not supported by evidence of any valid safety concerns. *OPM,* 7 F.Supp.2d at 1324; *see also, Iowa Wireless Serv., L.P. v. City of Moline,* 29 F.Supp.2d 915, 921 (C.D.Ill. 1998) (concern that tower might fall not probative in light of unrefuted evidence that tower was to be designed in compliance with FCC specifications and would "collapse on itself, not topple as earlier designs could.").

As with the wetlands issue in *OPM,* Plaintiff offered voluminous engineering evidence to allay any concerns about the fall zone of the tower and the neighboring structure. The Coweta County Board did not pursue any additional evidence from Group EMF regarding the fall zone after expressly agreeing with the engineer's testimony and gave no indication to the applicant that it would rest its decision on the fall zone issue. Despite the local ordinance presuming a fall zone equal to the height of a tower, the Board's decision to deny the special use permit on the basis of the fall zone is not supported by substantial evidence as required by the Telecommunications Act.

## 2. Alternate Tower Site

■ The second reason offered by the Coweta County Board for denying Group EMF's application was that "the tower at Thomas Crossroads should be considered for co-location status." In addition, Coweta County now argues that there were other possible alternative sites for construction of the tower that were not considered by Group EMF and that this justified denial of the permit. The Court will address each ground for the decision in turn.

With respect to existing towers like the one at Thomas Crossroads, the Coweta County tower ordinance provides that "no new tower shall be permitted unless the applicant demonstrates to the reasonable satisfaction of the governing authority that no existing tower or structure can accommodate the applicant's proposed antenna." This provision specifically states that an applicant may demonstrate this by showing that "no existing towers or structures are located within the geographic area required to meet applicant's engineering requirements."

At the hearing on Group EMF's application, Group EMF demonstrated that Sprint PCS and two other wireless service providers would use the proposed tower. In order to explain the desired location, Group EMF presented the testimony of Andy Przybysz, a property specialist with Sprint PCS. Mr. Przybysz testified that he was responsible for determining the necessary location for Sprint PCS towers.

He explained that towers work in a network and that their power and reach is limited by the frequency provided for wireless services by Sprint's FCC license. Mr. Przybysz explained that Sprint's radio frequency engineers evaluate gaps in wireless coverage and develop "search areas" to fill the gaps consistent with Sprint's obligations to provide coverage pursuant to FCC regulations. He explained that there is an existing gap in wireless coverage in Coweta County. Further, the wireless tower located at the Thomas Crossroads site is not within the search area needed to fill the existing gap as shown by the fact that Sprint PCS is already located on the Thomas Crossroads tower. This evidence regarding the Thomas Crossroads tower was undisputed.

Based upon the record of the proceedings before the Coweta County Board of Commissioners, the Board's decision to deny Group EMF's application for a special use permit because "the tower at Thomas Crossroads should be considered for co-location status" is not supported by substantial evidence. The only evidence offered on this point showed that the primary tenant of the proposed tower was already located on the Thomas Crossroads tower, thus conclusively demonstrating that it had been "considered" to alleviate the gap in coverage. Even if Sprint were not already located on the Thomas Crossroads tower, the evidence demonstrated that the Thomas Crossroads tower is outside the "search area" in which a new site must be located in order to close the gap in coverage in Coweta County. Therefore, a denial of the permit based upon Group EMF's failure to consider location on the Thomas Crossroads tower is unsupported by substantial evidence when the record is viewed in its entirety.

■ In its briefing on the motion for partial summary judgment, Coweta County also argues that Group EMF failed to consider other possible alternative sites for the placement of the tower due to the higher cost of the property for those sites. First, the Court notes that this basis for denying the special use permit was not cited by the Board in voting against the application. Nor was it raised in the letter informing Group EMF of the reasons for denial of its application. Coweta County is bound by its written notice to Plaintiff and should not be permitted to continue to construct grounds for the denial.

■ Second, even if the County had relied upon this ground, the Court finds a lack of substantial evidence in the written record to support the denial on this basis. As noted, the Court must look to the substantive requirements of local regulations in evaluating the denial of a permit for the construction of a wireless facility. Although the County claims that Plaintiff was required to show that other potential locations did not exist "as a legal matter," Coweta County fails to point to the portion of the local ordinance requiring such a showing. Further, a review of the tower ordinance reveals no provision that requires an applicant for a special use permit to show that no other potential site would accommodate its needs. The only similar consideration specified by the ordinance is the availability of "existing towers and other structures," not the availability of alternative unimproved property. Accordingly, this reason for the denial does not find support in the Coweta County ordinance itself.

Even if the Coweta County ordinance did require a showing that no other potential site would accommodate an applicant's needs, the transcript of the proceedings before the Board of Commissioners demonstrates that Group EMF did provide unrefuted evidence that the proposed site was the only appropriate site to bridge the existing gap in wireless coverage in the County.

While the Board repeatedly opined that it simply did not believe that commercial property outside the search ring would not provide the necessary coverage, Mr. Przybysz reiterated time and again that only sites within the "search ring" identified by Sprint's computer models would bridge the

existing gap in wireless coverage due to limitations on the wireless frequency mandated by the FCC. Even though the Board may not have believed Mr. Przybysz, substantial evidence must exist in the record to support their disbelief.

Second, Mr. Przybysz testified that there is no property within the search ring zoned for commercial use. The proposed church property is the only site within the search ring that is not currently being used as a residence, thus making it the "best" site for the new tower.

The County interprets Plaintiff's characterization of the site as the "best" alternative as evidence that Group EMF chose the site solely to avoid paying a higher price for more appropriately zoned property, despite Group EMF's evidence that the proposed church property is the "best" because it is the only site within the necessary search ring that is not being used for truly residential purposes.

Looking to the written record, no evidence supports the County's suspicions. Indeed, Mr. Przybysz, the property specialist for Sprint PCS, testified unequivocally that the cost of land had no impact on this particular choice of property, which was driven solely by frequency engineering needs. As such, the Board's suspicions cannot constitute the substantial evidence necessary to support a denial of the special use permit without any evidence in the record to support those suspicions.

In sum, the Coweta County Board of Commissioners did not rely upon the existence of alternative sites in denying Group EMF's special use permit and should not be permitted to construct a basis for denial after the fact. Even if this were permissible, the Coweta County tower ordinance contains no requirement that an applicant for a special use permit demonstrate that no alternative site exists. However, even if the ordinance required proof that no alternative site would be appropriate, the written record contains uncontested evidence to that effect.

Therefore, substantial evidence does not exist in the written record on Group EMF's application to support the County's denial of a special use permit based upon the existence of the Thomas Crossroads tower or the existence of alternative sites in more appropriately zoned areas.

### 3. Airport Safety

██ The third reason offered by Coweta County for denying Group EMF's application for a special use permit is the location of a private landing strip within 4,975 feet of the proposed site of the tower. At the hearing before the Board of Commissioners regarding Group EMF's application, the Planning Department indicated that its concerns regarding the private airstrip and the proposed tower originated from the comments of the owner of the landing strip. Mr. Ronnie Cox, owner of the Rolling Meadow Farm Airport, commented to the Planning Department that:

> The proposed location of the tower is virtually on the extended center line of the runway. Locating the tower on this site would cause an unnecessary risk to flight from Rolling Meadow Farm Airport.

At the hearing, however, Mr. Ken Patterson, an airspace specialist with Airspace Safety Analysis Corporation, testified that his company had performed an airspace evaluation to address any safety concerns presented by the proximity of the proposed tower to the Rolling Meadow Farm Airport. Mr. Patterson explained that his company is primarily involved in doing Federal Aviation Administration compliance work for telecommunications companies. Because the FAA does not regulate private airstrips such as the Rolling Meadow Farm Airport, Mr. Patterson stated that this airspace evaluation project was not regulated by the FAA. Nonetheless, Mr. Patterson testified that his company had performed a "mirror evaluation" of "what the FAA would do on this site."

Mr. Patterson explained that his company had evaluated the airport and the traffic patterns in relation to the proposed site for the tower. He stated that the tower

was not located on the extended center line of the airport runway, but approximately 750 feet away from the center line. He concluded that this tower would be approved by the FAA if it were subject to regulation and that, in the professional opinion of his company, "there is no safety issue for the Rolling Meadows Airport caused by this tower." The calculations contained in the airspace evaluation report provided to the Board supported this conclusion.

Ms. Patricia Chapman testified on behalf of Group EMF that the originally scheduled hearing on the application for the special use permit had been delayed to enable Group EMF to discuss the findings of this aeronautical study with Mr. Cox, owner of the Rolling Meadow Farm Airport, and to address his safety concerns. Ms. Chapman explained that representatives of Group EMF had visited Mr. Cox and provided him with the report. Group EMF sought to schedule a meeting with Mr. Cox after he had an opportunity to review the report to discuss any outstanding concerns he might have. As of the date of the second hearing, Mr. Cox had not responded to these efforts. He did not attend the final hearing on Group EMF's application.

The Board cited safety concerns relating to the Rolling Meadows Farm Airport as the third basis for its denial of Group EMF's application for a special use permit. The denial stated:

> There is an airstrip located within 4,975 feet. The proposed location of the tower is on the extended center line of the runway. Locating the tower on this site would cause an unnecessary risk to flight from Rolling Meadow Farm Airport.

The Board's denial did not reconcile or discuss the evidence presented by Group EMF that the tower met all FAA regulations and would not present a safety risk to the airport. Viewing the record in its entirety, therefore, the Board's denial on this ground is not supported by substantial evidence in the written record. The only

evidence regarding safety issues originated from the generalized and unsubstantiated concerns of the airstrip owner. While this concerned owner commented that the tower would be located "*virtually* on the extended center line of the runway" and Mr. Patterson testified that the tower would be approximately 750 feet away from the center line, the Board concluded that the proposed location of the tower is "*on* the extended center line of the runway." There is no evidence in the written record to support this conclusion. In light of the thorough unrefuted evidence presented by the applicant, the generalized concerns of the owner of the private pasture landing strip do not constitute substantial evidence to support a denial of Group EMF's application.

In *AT&T Wireless PCS, Inc. v. City of Chamblee*, 10 F.Supp.2d 1326 (N.D.Ga. 1997), the City of Chamblee denied an application to construct a 140 foot wireless tower, in part, due to concerns regarding the tower's interference with helicopter traffic to a nearby airport. In applying for a permit, the wireless provider had demonstrated compliance with all FAA regulations and had presented evidence that no safety issue existed with respect to helicopter traffic. In reviewing the City's denial of the application under the Telecommunications Act, the court found that generalized safety concerns regarding helicopter traffic did not constitute substantial evidence to support the denial of the application under the Act in light of the substantiated and unrebutted evidence to the contrary. Similarly, in this case, the generalized and unsubstantiated concerns of one property owner cannot constitute substantial evidence to support the denial of Group EMF's application for a special use permit.

### D. Relief

■ Because the Court has found that Coweta County's decision to deny Group EMF a special use permit is not supported by substantial evidence in a written record,

Group EMF is entitled to partial summary judgment on the Telecommunications Act claim. Group EMF has requested that the Court enter an order directing Coweta County to issue the special use permit for the construction of the tower on the proposed site. Defendants argue that the case should be remanded for further proceedings before the Coweta County Board of Commissioners to "allow the County to hire experts to support the findings made by the Coweta County Commissioners and its employees."

While the Telecommunications Act does require courts to hear and decide such actions "on an expedited basis," the statute does not specify the appropriate remedy. *See* 47 U.S.C. § 332(c)(7)(B)(v). In *Bell-South Mobility*, the court found that simply remanding a matter to the local authority after concluding that substantial evidence did not support a permit denial "would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis." *BellSouth Mobility*, 944 F.Supp. 923, 929 (N.D.Ga.1996) (Tidwell, J.). In that case, Judge Tidwell ordered Gwinnett County to grant the plaintiff's application for a "tall structure permit." *Id.* Similarly, in *AT&T Wireless PCS, Inc. v. City of Chamblee*, 10 F.Supp.2d 1326, 1334 (N.D.Ga.1997) (Carnes, J.), the court found mandamus relief authorized by the Telecommunications Act and ordered the defendant to issue a building permit for the plaintiff's proposed tower.

While the County's desire for an additional opportunity to address the evidence submitted in support of Group EMF's application is understandable, the Court notes that the County had ample opportunity to hire experts or to conduct other types of investigation regarding the propriety of the special use permit prior to voting on the application. The Court further notes that there was a delay of approximately six weeks between the Planning Department's recommendation that the permit be denied and the original hearing scheduled before the Board of Commissioners. Additional investigation could easily have been performed during this time frame. Further, Group EMF requested the postponement of the original hearing on the application, which resulted in approximately four more weeks of delay prior to the final hearing before the Board.

Despite these delays, the County argues that it did not have a fair opportunity to contest Group EMF's experts since the County received much of the material relied upon by Group EMF on the day of the hearing. There are two responses to this concern. First, the County is not Group EMF's adversary at the hearing stage. The County staff, as well as the residents in the affected area, had ample opportunity to document their concerns about safety or alternative sites. The County Commissioners, however, were sitting as an adjudicatory authority to review the evidence. Second, the County establishes and controls procedure for these applications. The Board did not take action on the application at the final hearing and nothing prevented the Board from continuing the hearing in order to compile evidence to refute this information prior to making its final decision. Once the County has established its procedure and the procedure has been followed in denying a permit, it would neither be fair nor consistent with the Telecommunications Act to allow the County to continue to seek further justification outside the record for its denial.

Finally, despite the fact that many months have elapsed since the denial of the application and the initiation of this lawsuit, the County still offers no indication of the evidence that could be compiled which would support the denial of Group EMF's application under the Coweta County tower ordinance.

In light of this history, the Court finds that remand to allow the County further opportunity to support its denial of the permit almost a year after the fact would clearly frustrate the Telecommunications Act's guarantee of expedited relief. Accordingly, the Court hereby **ORDERS** Defendant Coweta County to issue to Group EMF a special use permit to construct the

proposed 150 foot monopole tower on the property it has leased from the First Church of Nazarene.

## III. CONCLUSION

Based upon the foregoing, Plaintiff's Cross Motion for Partial Summary Judgment [# 12–1] is **GRANTED** and Defendant's Motion for Partial Summary Judgment [# 6–1] is **DENIED.** Defendant Coweta County is hereby **ORDERED** to issue to Group EMF a special use permit to construct the proposed 150 foot monopole tower on the property it has leased from the First Church of Nazarene. Plaintiff's Motion to Exceed Page Limit [# 11–1] is **GRANTED.**